[S. F. No. 14972. In Bank.—December 29, 1933.]

LONG BEACH CITY SCHOOL DISTRICT (a Body Corporate and Politic) et al., Petitioners, v. HERBERT A. PAYNE, as County Auditor, etc., et al., Respondents.

Hill, Morgan & Bledsoe, A. J. Hill and Kenneth K. Wright for Petitioners.

Everett W. Mattoon, County Counsel, and J. H. O'Connor, Assistant County Counsel, for Respondents.

SHENK, J.—This is a proceeding in *mandamus* to compel the respondent county auditor to credit to the acccount of the petitioning school district the percentages imposed by law on account of delinquent payment of taxes levied for school district purposes, and collected by the county officers, and reported to the auditor between July 1, 1931, and June 30, 1932. The delinquent percentages for that period amounted to $5,798.47 and were credited by the auditor to the general fund of the county, where they now remain.

In their return to the alternative writ the respondents have interposed a general demurrer to the petition and a denial of the allegation that the petitioners have no plain, speedy or adequate remedy at law. The respondents contend that the petitioners' remedy is the presentation of a claim to the board of supervisors pursuant to sections 4075 et seq. of the Political Code, and an action at law upon the rejection of such claim. If under the statutes these delinquent percentages on taxes levied for school dis-

trict purposes, when collected, should be credited to the school district fund, then it is the duty of the respondent auditor so to credit the sum alleged to have been collected. The claim, however, is not such a claim as must be pursued by formal presentation of an itemized demand and subsequent procedure. (*City of Fergus Falls* v. *Board of Commrs.*, 88 Minn. 346 [93 N. W. 126].) The proper credit to an appropriate fund is in the nature of a public duty as to which *mandamus* will lie to compel performance. (*People* v. *Reis*, 76 Cal. 269 [18 Pac. 309]; *Corbett* v. *Widber*, 123 Cal. 154 [55 Pac. 764].)

The sole remaining question is whether the percentages added because of delinquency in the payment of school district taxes are payable into the general fund of the county or into the school district fund.

The general rule is that the penalties follow the tax. This rule is stated with supporting authorities in 61 C. J., at pages 1528 and 1529, as follows: "Unless otherwise directed, interest, penalties, and costs collected on delinquent taxes follow the tax, and go to the state, county, or city, according as the one or the other is entitled to the tax itself; and, in cases where two or more of them are interested in the tax, such interest and penalties should be apportioned among them in the ratio of their respective shares of the tax, the foregoing being sometimes provided for by statute. But the legislature may change this rule and dispose otherwise of interest or penalties. A statute for the distribution of interest and penalties collected in a different manner from the disposition of the taxes on which the interest and penalties are based does not amount to the application of taxes to objects other than for which they were imposed."

[4] In the present proceeding the petitioning school district is in the same category as the state, county or city named in the foregoing statement of the general rule. The school district is a separate governmental entity, supported by taxation, and the county is the governmental agency upon which the law imposes the duty to levy and collect the taxes. (See *Esberg* v. *Badaracco*, 202 Cal. 110 [259 Pac. 730].) It may be assumed that, as to the delinquent percentages involved herein, the petitioning district is entitled

to the application of the foregoing general rule unless the legislature has otherwise directed.

The position of the petitioners is that the legislature not only has not otherwise directed, but that by the enactment of certain provisions of section 3816 of the Political Code has definitely confirmed the operation of the general rule. The respondents contend that the legislature has otherwise provided in section 3756 and certain other provisions of section 3816 of the Political Code. The pertinent provisions of section 3756 are as follows: "On the fifth day of December of each year, at five o'clock P. M., all taxes then unpaid, except the last installment of real property taxes, are delinquent, and thereafter the tax collector must collect, *for the use of the county*, or city and county, an additional ten per cent thereon. On the twentieth day of April of each year, at five o'clock P. M., he shall collect an additional five per cent thereon. On the twentieth day of April of each year, at five o'clock P. M., all the unpaid portion of the remaining one-half of the taxes on all real property is delinquent, and thereafter the tax collector must collect, *for the use of the county*, or city and county, an additional five per cent thereon. . . . " It is pursuant to the foregoing provisions of section 3756 that *any* percentages are added because of delinquencies in payment, and by the terms thereof *all* taxes, including school taxes, are delinquent if not paid within the prescribed time. And it is obvious that provision has been made therein otherwise than in accordance with the general rule in so far as taxes other than county taxes were concerned, for it is there provided, without any uncertainty or ambiguity whatsoever, that the percentages added as to *all* delinquent taxes shall be collected for the use of the county.

Section 3816 of the Political Code reads in part as follows: "Whenever property sold to the state, pursuant to the provisions of this chapter, shall be redeemed as herein provided, the moneys received on account of said redemption shall be distributed as follows: The original and subsequent taxes, and percentages, penalty, and the interest paid on redemption, shall be apportioned between the state and county, or city and county, in the same proportion that the tax rate bears to the county, or city and county, rate of taxation; the additional penalties received on account of

delinquency, together with the costs, *shall be paid into the treasury for the use and benefit of the county,* or city and county; the total amount received for state Poll tax shall be paid to the state, without reduction of any percentages; the amount received for road or hospital tax, and *the amounts received for school,* or road district, or other *taxes, with the penalties thereon, shall be paid into the county treasury, and placed to the credit of the proper funds. . . . "

The respondents insist that the language above quoted and first italicized is directly in line with the general legislative plan of allocation as evidenced by section 3756, and the petitioners contend that the language last italicized above is an indication of an intention that the general rule should not be disturbed and that the percentages for delinquency should follow the tax itself.

It is necessary to note with care the subject matter of the two code sections and the applicability of their language to the problem presented. Section 3756 has to do with tax collections prior to the time when redemption may be made. If taxes are not paid before delinquency on December 5th and April 20th of each year, the percentages for delinquency are added. These percentages are not "penalties" as that term is generally known in law. (*County of Los Angeles* v. *Ballerino,* 99 Cal. 593 [32 Pac. 581, 34 Pac. 329].) They are the "means provided for obtaining the tax itself by presenting an inducement to make voluntary payment on or before the day fixed for that purpose". (*High* v. *Shoemaker,* 22 Cal. 363.) The use of the word "penalties" in the phrase in section 3816, to wit: "the additional penalties received on account of delinquency . . . shall be paid into the treasury for the use and benefit of the county", does not necessarily convert the percentages for delinquency into penalties, but should be considered, for the purposes of this case, as limited to the delinquent percentages there dealt with.

When taxes become delinquent the auditor computes the amount of the percentages and totals the amount of tax and percentages on the tax record and charges the total to the tax collector. The books are then still in the hands of the tax collector and the taxes and added percentages are subject to payment to him until after the publication

by him of the delinquent tax list and the sale to the state by operation of law, which occurs about the 1st of July of each year. It is an unquestionable fact that delinquent taxes with added percentages are paid to the tax collector while the books are still in his hands between December 5th and July 1st of each year and it is fair to assume that added percentages for delinquency, which have been so collected by the tax collector, are included in the amount which the petitioners are now demanding that the auditor credit to the school district fund. It is the added percentages with which section 3756 deals and as these funds are allocated by that section to the use of the county the petitioners have no interest in them and the auditor is justified in refusing to credit them to the school district fund, unless section 3816 requires a different result.

After the sale to the state the real property is then for the first time subject to redemption. The penalties for redemption are heavy and are provided in section 3817 of the Political Code. In addition to these penalties the amount of the added percentages for delinquency must be paid before a redemption can be made. After redemption is accomplished section 3816 provides how the redemption money shall be distributed. It is therein specifically provided, as noted, that "the additional penalties received on account of delinquency, together with costs, shall be paid into the treasury for the use and benefit of the county". It is therefore important to keep in mind the distinction for purposes of distribution between the percentages which accumulate under section 3756 on account of delinquency prior to the sale to the state and the penalties for redemption as provided in section 3816. When this distinction is observed we find that the legislature has in three different places, and without uncertainty, directed that the percentages added and collected because of delinquency in payment shall be distributed for the use of the county— twice in section 3756 and once in section 3816. The petitioners insist that the word "penalties" used in the phrase relied upon in section 3816, namely, "together with the penalties thereon", should be held to include percentages for delinquency and that "the proper fund" is the school fund. It is then argued that the direction that the school taxes "with the penalties thereon" be paid into the "proper

fund'', is a special provision with reference to the distribution of percentages for delinquency and that this special provision is controlling over the other general provisions in the same section and the general provisions in section 3756, directing that the percentages on account of delinquency shall be paid into the general fund of the county. This result does not follow. Effect must be given to both provisions if, within reason, that may be done. If they are inconsistent it is assumed that the special provision would control the general. It would seem that the general provisions of the sections are inconsistent with the special provision relied upon in so far as the distribution of ''penalties'' for redemption as between the county and the school district are concerned, but by direct statement of the petitioners ''the redemption penalties under section 3817 of the Political Code are not involved in this action''. ■ When the legislature, in the language relied upon by the petitioners, directed that ''penalties'' on school taxes should be distributed to the appropriate fund, it must be held that the word ''penalties'' was used in the sense of penalties for redemption as provided in section 3817 and not as percentages for delinquency dealt with either before or after sale to the state. This construction permits both provisions to operate in harmony as to the percentages for delinquency, which result was undoubtedly intended by the legislature. This conclusion is the same as that arrived at in the opinions of the attorney-general in 1916 and 1917, transmitted to the county and state officials, as to the distribution of percentages for delinquency and redemption moneys under sections 3756 and 3816 of the Political Code. The law now applicable to the subject is the same as it was when those opinions were rendered and if a different meaning was intended by the legislature or a different result desirable the opportunity has been afforded during the last fifteen years to provide by appropriate legislation to that end.

■ The petitioners call attention to the fact that section 3804 of the Political Code provides that when ''taxes, penalties and costs'' are levied by the county on behalf of any school district, or any municipal or other public corporation and are erroneously, etc., collected, the same may be refunded by order of the supervisors out of any money

in possession of the county treasurer "belonging to the appropriate fund of the school district or municipal or other public corporation". It is argued that the foregoing provision requires that the refund for percentages for delinquency must be paid out of the school district fund when in fact, if the position of the petitioners be not sustained, no percentages for delinquency have been paid into that fund. Assuming for the moment that the word "penalties" as used in this section is broad enough generally to include percentages for delinquency paid into the county treasury, the "appropriate fund" out of which to make the refund would be the fund which had received the same, and since the general fund is the fund which would receive the erroneously collected percentages for delinquency that fund should bear the burden of that portion of the refund.

■ The petitioners further contend that if section 3756 purports to require that the percentages for delinquency be collected by the tax collector for the use of the county, the section is to that extent unconstitutional. Attention is called to section 1 of article IX of the Constitution providing in general terms for the promotion of intellectual improvement and to section 6 of the same article requiring that the legislature shall provide for a system of common schools and for the levy of school district taxes by the board of supervisors of each county for public school purposes. But those sections of the Constitution do not purport to deprive the legislature of the power to provide the means by which such tax levies are to be made and the taxes to be collected. The means of providing revenue by taxation for school purposes is left generally to the legislature by section 4 of article IX of the Constitution. (*Crosby* v. *Lyon*, 37 Cal. 242.) Related sections of the Political Code and the School Code were enacted in pursuance of that general power.

■ The petitioners seek further to fortify their position by reference to section 3746 of the Political Code, which requires the tax collector to publish notice of the time when taxes will be due and that if not paid within the time specified the ten and five per cent will be "added to the amount thereof". In reliance upon the phrase last quoted the petitioners contend that the percentages so added become a part of the tax and are thereby inviolably set apart

for school purposes. We think the quoted phrase is not a substantial enlargement of the nature and character of the percentages so as to constitute it a part of the tax itself. In characterizing such additions under the Montana statute the court, in *School District No. 12* v. *Pondera County,* 89 Mont. 342, stated at page 348 [297 Pac. 498, 501]: "These additions are not a part of the tax, but a mere creation of the legislature, and, as a general rule, that body may dispose of them as it likes, regardless of the purpose of the tax, as against an objection that public moneys raised for one purpose cannot be used for another." (See, also, Cooley, Taxation, 4th ed., sec. 1821.)

There is no case in this state directly in point on the question presented. In *Honeycutt* v. *Colgan,* 3 Cal. App. 748 [85 Pac. 165], the sections of the Political Code here involved were construed and the distinction between delinquent percentages and redemption penalties was pointed out. The question of the right of school districts in the premises was not involved. Other cases from foreign jurisdictions are not especially helpful. All seem to recognize the general rule and apply it when the legislative body has not otherwise directed. Whether provision has been made otherwise than in accordance with the general rule depends upon the proper construction of the statutes in each case. The conclusion having been reached that the legislature of this state has otherwise directed, it follows that the position of the petitioners cannot be sustained.

The petition for a peremptory writ is denied and the alternative writ is discharged.

Thompson, J., Preston, J., Langdon, J., Waste, C. J., Seawell, J., and Curtis, J., concurred.