[Civ. No. 9950. First Appellate District, Division One.—December 27, 1937.]

COUNTY OF LOS ANGELES, Appellant, v. ROBERT RANSOHOFF et al., Respondents.

Everett W. Mattoon, County Counsel, and Beach Vasey, Deputy County Counsel, for Appellant.

Livingston & Livingston and Richard Wagner for Respondents.

Holbrook & Tarr and W. Sumner Holbrook, Jr., as *Amici Curiae*, on Behalf of Respondents.

KNIGHT, J.—The County of Los Angeles brought this action to collect an unsecured personal property tax amounting with penalties to $1608.67, levied on defendants' property for county purposes for the year 1933–34. The defendants challenged the validity of the tax upon the ground that the assessment upon which it was based was arbitrary, excessive, and fraudulent, and was fixed pursuant to an illegal method. The trial court in effect so found, and entered judgment in favor of defendants, from which the county appeals.

Summarized, the points urged for reversal are: first, that the application filed by defendants with the county board of equalization for a reduction of said assessment was legally insufficient in its statement of facts to meet the requirements of section 3674 of the Political Code, and that therefore defendants were precluded in the present action from attacking the legality of the assessment (*Mahoney* v. *City of San Diego*, 198 Cal. 388 [245 Pac. 189]; *Luce* v. *City of San Diego*,

198 Cal. 405 [245 Pac. 196]); secondly, that the allegations of defendants' answer to the complaint herein, with respect to their offer to pay the amount of any tax found to be due on a fair assessment, were legally insufficient to conform to the rule stated in *County of Los Angeles* v. *Ballerino*, 99 Cal. 593 [32 Pac. 581, 34 Pac. 329], and that consequently defendants were not entitled to any relief; thirdly, that in any event the county was entitled to a judgment for the amount of taxes found to be due on an equitable assessment. (*County of Los Angeles* v. *Ballerino, supra.*)

The defendants in answer to the first point contend that the application filed by them with the board of equalization for an assessment reduction was not defective, much less void; furthermore, that the county is barred by the rule of waiver from raising the question of the sufficiency of said application for the reason that, as shown by the undisputed evidence, it was made out on a form prepared and printed by the county and supplied by it to all taxpayers seeking assessment reductions; that said board received and filed the same, and heard the evidence produced in support thereof, without making any objection whatever to the form or substance of the application, or the character of the evidence defendants produced; and that thereafter the board determined the issue of fact raised thereby. Defendants cite no case in point from this jurisdiction to support their latter contention, but they seek to invoke the doctrine of waiver universally applied by the courts of the state of New York in like cases.

We need give no further consideration, however, to the question of waiver, because we are convinced that the county's attack upon the legal sufficiency of said application cannot be sustained. Stated briefly, the transactions leading up to the denial of said application were as follows: For several years defendants, as copartners, owned and operated a retail merchandise store in Los Angeles, which they closed on May 30, 1933. At the beginning of the assessment year 1933–1934 the assessor of said county, in order to obtain uniformity and equality in the assessment of stocks of merchandise, fixtures and other equipment of all mercantile establishments doing business in said county and to make due allowances for depreciation, etc., adopted and pursued the following rule: He assessed all merchandise at 40 per cent of the cost price as shown by the owner's books, and the fixtures, factory and

office equipment at 30 per cent of their book value. But admittedly, in assessing defendants' property he wilfully disregarded his rule of uniformity, and arbitrarily assessed their merchandise at 60 per cent of the book value, and the fixtures and equipment at over 100 per cent of the book value. Manifestly, therefore, the assessment so made was not only wholly without any basis of equality in comparison with the assessment of like property of other merchants doing business in the same county, but was so grossly discriminatory and excessive as to amount to a constructive fraud. (*Birch* v. *County of Orange*, 186 Cal. 736 [200 Pac. 647]; *Mahoney* v. *City of San Diego, supra.*) Within the time allowed by law defendants filed with the county board of equalization their verified application for a reduction of said assessment; but following a hearing it was denied.

 For obvious reasons said section 3674 of the Political Code does not prescribe any special form of application a taxpayer must file with the board of equalization in order to obtain a fair adjustment of the assessment of his property; nor do any of the provisions of said section demand that the allegations of such an application follow any technical rules of pleading. All that the section requires is that the party affected or his agent shall file a verified application "showing the facts upon which it is claimed such reduction should be made". And in this connection it is held that in considering the legal sufficiency of such an application, mere informalities should receive a liberal indulgence, and that the purpose of the statutory requirement is served if the board may know from said application "or have some reasonable means of ascertaining" therefrom what the claim of the applicant is, to the end that such claims may be investigated by the assessing authorities prior to the hearing. (*Rittersbacher* v. *Board of Supervisors*, 220 Cal. 535 [32 Pac. (2d) 135].)

 The application in the present case was, as stated, made out on the printed form supplied by the county. It alleged, among other things, "that the full cash value of said property is as stated below", and asked "that the valuation on said property be reduced from the amount fixed by the assessor to the amount hereinafter stated as the full cash value of said property"; and in an exhibit attached to and made part of the application defendants set forth the name of the property owner, the location of the store, and definitely

specified the different classes of the assessable property the firm owned, the amount of assessment placed on each class by the assessor, and the respective amounts to which the assessment thereon should be reduced, to wit: they asked that the assessment on the store fixtures which was set by the assessor at $6,750 be reduced to $1,000; that the amount of the factory equipment fixed by the assessor at $750 be reduced to $250; that the assessment of merchandise fixed by the assessor at $24,750 be reduced to $8,000; and that the assessment of office equipment fixed by the assessor at $1650 be reduced to $500. And finally, it was alleged therein "that the grounds upon which such change is asked and should be made are as follows, to-wit: Unequal Value".

As defined by Webster's Dictionary, the word "unequal" means "not uniform"; and the word "uniform" as defined by the same dictionary means "conforming to one rule or mode". Furthermore, in dealing with the meaning of the word "equalization", which like the word "unequal" is a derivative of the word "equal", the Supreme Court in the case of *Wells Fargo & Co.* v. *State Board of Equalization,* 56 Cal. 194, said: "To equalize is to make equal, to cause to correspond, or be like in amount or degree, as compared with something." Here, admittedly, the wilful act of the assessor in applying to defendants' property a rule or mode of assessment vastly different from the one used by him in assessing the property of others, of the same class and character and in the same county, resulted in placing on defendant' property an assessment of "unequal value" as compared with the assessment of other like properties. It is apparent, therefore, that when the term "unequal value" as employed by defendants in stating the ground of their application, is construed in the light of the above definitions, and the facts and data set out in the exhibit attached to the application, it is peculiarly appropriate to describe the condition of disparity of assessment about which defendants were complaining. Moreover, all parties at the hearing before the board doubtless so construed the meaning of said term because the evidence there adduced was directed to the point of establishing the existence of the rule of uniformity adopted and followed by the assessor in assessing the personal property of merchants, and the disparity of assessment in the defendants' case brought about by the assessor's wilful and intentional disregard of such

rule. Clearly, therefore, in the face of the facts and circumstances stated, there could be no justification for holding, as the county contends we should, that the form of application filed by the defendants was not legally sufficient to confer jurisdiction upon said board to grant the relief sought thereby.

Furthermore, the county in its opening brief has quoted in full, in parallel columns, a copy of the application filed in the case of *Rittersbacher* v. *Board of Supervisors, supra,* and a copy of the one filed by defendants in the present case; and as claimed by the county the applications are in all material respects identical in form. There, as here, it was alleged ''that the grounds upon which such change is asked and should be made are as follows, to-wit: unequal value''; furthermore, the prayer of both applications was ''that the reduction be granted as prayed''. The only difference between the two documents is that in the Rittersbacher application the description of the property, and the assessed and the cash values thereof, were set out in the body of the application; whereas in the present case those facts were set out in greater detail in an exhibit attached to and made part of the application. And in that case the Supreme Court held that under the form of application there filed the complainant was entitled (upon sufficient evidentiary showing) to have her property placed ''on the same basis of valuation as that applied to other property of like character and similarly situated''. Manifestly, therefore, a like construction must be placed upon the form of application filed in the present case; namely, that it was sufficient to entitle defendants to have their property placed on the same basis as that applied to other property of like character and similarly situated.

True, in the Rittersbacher case the Supreme Court sustained the board's denial of the application. But the court did not do so, as the county seems to contend, upon the ground that the form of application filed with the board was insufficient to warrant the granting of a reduction upon the ground urged therein, to wit: ''unequal value''. In deciding this point the court placed its decision squarely upon the premise that the evidence before the board completely disproved the claim urged by the application that there was a disparity between the assessment of the complainant's property and that placed on like property similarly situated. Here, however, the undisputed evidence before the board proved conclusively

that there was a disparity between the assessment of defendants' property and that placed on like property similarly situated. Nevertheless, the application was denied.

It is true, also, that in the Rittersbacher case, among the reasons given by the Supreme Court for its affirmance of the trial court's judgment dismissing the action therein (which was in *mandamus*, by a taxpayer, to compel the cancellation of an alleged illegal assessment) was that the action was not maintainable. But the foundation for such ruling was that the petition for the writ of mandate was based on a ground entirely foreign to the one relied on by the complainant in her application before the board of equalization. In other words, as pointed out by the court, the petition for the writ was based solely upon the ground that in assessing all property in the county in proportion to its value to be ascertained as provided by law (Const., art. XIII, sec. 1; Pol. Code, secs. 3617, 3627) the assessor had adopted and applied a greater percentage of value in assessing all real estate and improvements than he did in assessing certain classes of personal property. And the court held that in applying to the courts for relief from the unjust burdens of an illegal assessment, an aggrieved party is restricted to the same ground of complaint as that urged by him before the board of equalization, notwithstanding that there was uncontradicted evidence before the board establishing the ground of complaint urged in applying for court relief. In so holding the court went on to say that the effect of granting the writ in that case upon the ground alleged in the petition therefor would be to invalidate the entire assessment of the county or would require the board to raise or lower the entire assessment roll, a power not possessed by the board. (Pol. Code, sec. 3673.)

We have no such situation here. The defendants attacked the validity of the assessment in the court action upon precisely the same ground that was urged by them in their application before the board of equalization for an assessment reduction; and admittedly the granting of court relief herein will affect no other property assessment than defendants. From the foregoing it will be seen that the portion of the decision in the Rittersbacher case dealing with the matter of the dismissal of the proceeding therein is not applicable here.

Nor is there any merit in the suggestion made by the county in its reply brief to the effect that the facts shown by the evidence and found by the trial court failed to establish an illegal assessment. As said in the case of *Birch* v. *County of Orange, supra,* a grossly inequitable and palpably excessive valuation of property for taxation may be held to amount to a constructive fraud; and as held in *Mahoney* v. *City of San Diego, supra,* it is not essential to the obtaining of court relief that fraud or bad faith on the part of the assessor shall be expressly shown; those elements, says the court, may arise by implication from the fact that the assessment when taken as a whole and viewed with respect to the assessable values of other taxable properties, discloses such a degree of discrimination between the properties of the same class as to clearly evince a wilful disregard of the statute governing and limiting the exercise of the assessor's discretionary powers.

Likewise without merit is the county's contention that the allegations of the answer are legally insufficient to meet the requirement of the rule that a taxpayer, seeking to defend against the collection of a tax upon the ground of an alleged fraudulent assessment, must allege in his answer that he has offered to pay the amount of taxes which would have been due if his property had been assessed at what he considered would have been a fair valuation, and that he is then willing to pay whatever amount the court should find to be equitable and just. (*County of Los Angeles* v. *Ballerino, supra.*) It may be conceded that defendants did not plead their offer in the language of the decision in the Ballerino case, but taking the allegations as a whole, they are sufficient, in our opinion, to bring the answer within the scope of the above rule. Moreover, the county did not demur to the answer, move to strike any portion thereof, make any objection to the evidence introduced by defendants in support of its allegations of tender, nor move for judgment on the pleadings; nor, in the bill of exceptions upon which the appeal was taken is there any exception noted to the sufficiency of the answer. It would seem, therefore, that, as defendants contend, it is too late to make such claim of infirmity for the first time in presenting the appeal. (*Mauck* v. *Northwestern Nat. Ins. Co.*, 102 Cal. App. 510 [283 Pac. 338]; *Kurokawa* v. *Saroyan*, 95 Cal. App. 772 [273 Pac. 613].)

■ We are also of the opinion, however, that the county was entitled to a judgment against defendants for the amount of taxes found to be due on an equitable assessment. (*County of Los Angeles* v. *Ballerino, supra.*) As held in the case just cited, in appealing to a court for equitable relief from the imposition of a tax based on an illegal assessment, the aggrieved party must offer in his answer "to pay what the court shall find to be equitable and just"; and since defendants have insisted that their answer in substance so alleges and that hence they are entitled to equitable relief, they are not in a position at the same time to urge that the trial court was without legal authority to ascertain the just amount to be paid. In this regard the county and defendants agree that the store inventories submitted to the assessor's deputies by defendants' general manager about March 1, 1933, should be used as the basis for the fixing of an equitable assessment, and that applying thereto the rule of assessment adopted by the assessor in 1933–1934, the assessment should be fixed as follows: merchandise, $16,635.96; money, $100; fixtures, $2,361.09; total, $19,097.05. The tax rate for that year was $4.25 on each $100 of assessed value, so that the just amount of taxes due is $811.62; and this court so finds. (Code Civ. Proc., sec. 956a.)

Accordingly, it is ordered that the judgment be reversed, with directions to the trial court to enter judgment in favor of the county and against the respondents for the sum of $811.62, together with the amount of such statutory delinquencies and penalties thereon as the trial court ascertains will accrue up to the date of the entry of judgment. Respondents will recover their costs.

Tyler, P. J., and Cashin, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 24, 1938.